IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE **DIVISION**
**CIVIL ACTION NO.** 5:16-CV-00157-KDB-DCK

| | |
|---|---|
| SIMPSON PERFORMANCE PRODUCTS, INC., <br><br> **Plaintiffs,** <br><br> v. <br><br> ZAMP INC., <br><br> **Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on Defendant Zamp, Inc.'s ("Zamp") Motion for Summary Judgment (Doc. No. 46). The Court has carefully reviewed the motion and considered the parties' briefs and exhibits.[1] For the reasons discussed below, the Court will **DENY** Zamp's motion because there are genuine issues of material facts disputed between the parties on Plaintiff Simpson Performance Products, Inc.'s ("Simpson") claims of patent infringement against Zamp and/or Zamp is not entitled to judgment as a matter of law on those claims. Accordingly, this action should proceed towards a trial on the merits, if there is no earlier resolution of this matter either between the parties or by the Court.[2]

---

[1] The Court did not hold oral argument on the motion because it was not requested, is not necessary and would not have assisted the decisional process in the circumstances of this dispute.
[2] Simpson stated in its response to this motion that it intends to file its own motion for summary judgment at the close of expert discovery. The Court does not by this Order prejudge the merits of such a motion but notes that denial of summary judgment for one party does not necessarily lead to summary judgment for the opposing party. Indeed, it is for the jury not the Court to determine material disputed facts, including, but not limited to, assessing the credibility of expert and lay witnesses. With respect to a potential resolution of this matter between the parties, the filing of this Order does not relieve the parties of their obligation to hold a Settlement Conference following the briefing of this motion and file a certification of the conference with

1

I.  **LEGAL STANDARD**

Summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). "The burden on the moving party may be discharged by 'showing'. . . an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *see also Anderson*, 477 U.S. at 255. "Summary judgment

---

the Court pursuant to the Court's standing Pretrial Order and Case Management Plan at ¶ IV A, C.

cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility determinations." *Id*. at 569 (citing *Mercantile Peninsula Bank v. French* (*In re French*), 499 F.3d 345, 352 (4th Cir. 2007)).

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

In this action Simpson accuses Zamp of infringing and inducing infringement of nearly all of the nineteen claims of its U.S. Patent No. 9,351,529 (the "'529 Patent" or the "Patent"), which relates to a system of tethers and a helmet cooperating with the tethers for controlling a driver's head during operation of a vehicle. Specifically, Simpson alleges that Zamp's head and neck restraint products called the Zamp NT001003 Z-Tech Series 1A and Series 4A (the "Accused Products") infringe the '529 Patent. The Court has previously held a claim construction hearing and issued an Order construing various claim terms and phrases in the Patent for which a construction was requested. See Doc. No. 36 (the "Claim Construction Order" or "CCO"). Zamp has not requested that the Court reconsider the CCO, and the Court finds no reason to do so at this time. Accordingly, the Court will apply the constructions of the claims as described in the CCO for the purpose of ruling on this motion.

The background of the patented technology, the '529 Patent and the Accused Devices is described in detail in the Claim Construction Order and will not be repeated here. See Doc.

3

No. 36 at pp. 2-7. In summary, the '529 Patent relates to "the field of safety devices worn by a driver when operating a high performance vehicle." '529 Patent, col. 1, lines 14-15. A). It describes a restraint device that controls movement of a driver's head, and reduces forces applied to a driver's neck and spine when the driver is subjected to high acceleration and vibration forces." *Id.* at col. 1, lines 16-18.

The restraint device disclosed in the '529 Patent has a pair of side tethers for attachment to the helmet and a support member, and at least one rear tether attached to the support member and for attachment to the helmet. The rear tether and one of the pair of side tethers are jointly attached to the helmet at a single attachment point on each side of the helmet. *Id.*

The Accused Products are also head and neck restraints, but the Series 1A and Series 4A products use a single piece of Kevlar webbing to attach the support frame or harness to the driver's helmet. As described in the Declaration of David Zampierin and as shown in the exhibits attached to Defendant's motion, on each side of the Accused Products a portion of the webbing extends from the frame to a helmet spring clip, and another portion of the webbing extends from the helmet spring clip to a "T buckle" coupled with the frame. Simpson alleges that these sections of the single strap define the "rear tether" and "side tethers" claimed in the '529 Patent, and Zamp disputes that contention as discussed further below.

### III. DISCUSSION

The basis for Zamp's motion is Zamp's contention that the Accused Products do not infringe any claim of the '529 Patent because the Accused Products "do not include a rear tether and one of the pair of side tethers jointly attached to a helmet." Further, Zamp argues that the Series 1A and Series 4A do not include "a rear and side tether [that] attach at a first common

4

attachment location on the first side of the helmet and at a second common attachment location on the second side of the helmet, respectively." Further, Zamp claims that because the Accused Products include only a single strap of Kevlar webbing, they do not have a rear tether and side tethers that "are jointly attached to the helmet at a single attachment point on each respective side of the helmet." '529 Patent, col. 11, ll. 47-49, col. 12, ll. 22-24, 55-57.

Zamp claims that "[t]he plain and ordinary meaning of 'jointly attached' in the claims require the attachment to be done so <u>jointly</u>" (emphasis in Zamp argument). Similarly, Zamp argues that the claim language "[w]hen attached to the helmet, the rear and side tethers attach at a first common attachment location on a first side of the helmet and at a second common attachment location on a second side of the helmet, respectively" requires that the rear and side tethers "<u>attach</u>" at a "<u>common</u>" attachment location. (emphasis in Zamp's response, Doc. No. 47 at p.5)

Thus, Zamp's non-infringement argument hinges on the premise that the claim terms "tether" and "tethers" cannot refer to portions of the single strap that is used in Defendant's Accused Products. *See, e.g.*, Doc. 47, at 20–21, 24–45. However, as Simpson points out, Zamp made this argument with respect to several of the disputed claim terms in the claim construction process and the Court rejected Zamp's proposed construction, holding that – based on the definition of "tether" in the Patent's specification[3] – a "tether" "can be a 'network of

---

[3] In the CCO, the Court held that patentee acted as his own lexicographer by setting forth a specific definition for "tether" in the '529 Patent and the inventor's lexicography governs if the specification assigns a special definition that differs from the meaning it would otherwise possess. Doc. No. 36 at 17. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (the "patentee is free to be his own lexicographer"); *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)(in a patent's specifications claim terms can be given a specific meaning, which may differ from "their ordinary meaning").

5

webbing,' or even just a section of a longer strap." Doc. No. 36, at 17. The Court specifically rejected the position that the claims in the Patent require the use of multiple, discrete straps, explaining that "the plural term 'tethers' could refer to multiple sections of a single tether strap." *Id.* at 19. The Court explained:

> Zamp argues it is important to distinguish the two terms because the patented invention requires the use of multiple tethers and the Accused Device does not have multiple tethers. However, as explained in a previous section, the specification precludes an interpretation that suggests every tether must be a separate and discrete strap. . . . . Clearly, patentee anticipated the possibility that others may try to recreate its invention and try to avoid liability by simply using minor variations in the number of tether straps. The Court sees no reason to box patentee into a narrow construction that the ''529 Patent was written to avoid.

*Id.*

Thus, in the claim construction process, Zamp unsuccessfully argued the core premise of Zamp's summary judgment argument – that is, that a single strap is outside the claims of the '529 Patent and thus cannot infringe the Patent as a matter of law. While the specific argument that a single "strap" cannot be "jointly attached to the helmet at a single attachment point on each respective side of the helmet" and does not have "opposed end portions" for attachment to the helmet may not have been made at claim construction, that argument fares no better than Zamp's claim construction argument because it necessarily depends on the Court holding that portions of a single strap of webbing cannot be a "side tether" and a "rear tether," a holding that the Court has already refused to make. On the contrary, the Court has held that the '529 Patent "allows the rear tether and the pair of side tethers to be embodied as different portions of one continuous strap for interconnecting the support member to the helmet at the attachment point on each side of the helmet." Doc. No. 36 at p. 24, 26–28 (rejecting Defendant's argument that the phrase

"jointly attached" requires "the coming together of two things" or the terminal ends of two or more tethers).[4]

Further, the Court adopted Plaintiff's proposed construction of the limitation "jointly attached to the helmet at a single attachment point on each respective side of the helmet," finding that this limitation should be construed as "when attached to the helmet, the rear and side tethers attach at a first common attachment location on a first side of the helmet and at a second common attachment location on a second side of the helmet, respectively." Doc. No. 36, at 28-30.

In sum, within the construed claims of the '529 Patent, 1) a "side tether" and a "rear tether" can be part of a single continuous strap, 2) those "tethers" can be "jointly attached to the helmet at a single attachment point on each respective side of the helmet," and 3) "[w]hen attached to the helmet, the rear and side tethers [can] attach at a first common attachment location on a first side of the helmet and at a second common attachment location on a second side of the helmet." Because there is, at a minimum, a disputed issue of material fact as to whether the "single strap" in the Accused Products contains such "side tethers" and a "rear tether" that are so "jointly attached" or attached at "a common attachment location" on each side of the helmet, Zamp is not entitled to summary judgment on Simpson's claim of literal infringement.

---

[4] In the CCO the Court also held that the meaning assigned in the ''529 Patent to the term "tether" does not require two terminal ends, and that the patent's broad definition of this term (and its plural) should govern. *See id.* at 16-18 (explaining that a tether "can be . . . even just a section of a longer strap" and that "the plural term 'tethers' could refer to multiple sections of a single tether strap"). Similarly, during claim construction, Zamp argued that the phrase "jointly attached" needed to be construed and requested a construction that would limit this phrase to "the terminal ends of two or more tethers attached at a single point." *See* Doc. No. 36, at 27. The Court rejected the argument, stating that "the 'two terminal ends' requirement [is] inconsistent with the patent's definition of 'tether' and 'attach.'" *Id.*

Further, even if there were no disputed issues of material facts related to Simpson's claims of literal infringement, Zamp is not entitled to summary judgment under the "doctrine of equivalents," which Simpson asserts as an alternative basis for infringement. Under the doctrine of equivalents, an accused product that does not literally infringe each element of a patent claim may still infringe if each and every limitation of the claim is literally or equivalently present in the accused product or process. *Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997). The doctrine of equivalents is applied to individual claim limitations, rather than to an invention as a whole. *K–2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1367 (Fed.Cir.1999).

Depending on the facts of a case, courts can apply various tests to determine equivalence. *Warner–Jenkinson*, 520 U.S. at 39–40 (noting regardless of the test applied, the central inquiry is whether "the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention"). For example, under the insubstantial differences test, "[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed.Cir.2008) (quoting *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed.Cir.2004)). Alternatively, the function-way-result test defines equivalence as where "an element in the accused device ... 'performs substantially the same function in substantially the same way to obtain substantially the same result' as the claim limitation." *Id*. (quoting *Schoell v. Regal Marine Industries, Inc.*, 247 F.3d 1202, 1209–10 (Fed.Cir.2001)).

Relying on the declaration of its expert witness Hubert Gramling, Simpson claims that even if Zamp's "single strap" does not literally infringe the Patent, the use of a single, continuous strap is an "insubstantial difference" that infringes under the doctrine of equivalents. *See* Doc. No. 54, at ¶¶ 73-93. The Court finds that Mr. Gramling's testimony creates a factual

question for the jury to decide on the issue of infringement under the doctrine of equivalents. *See Vehicular Techs. Corp. v. Titan Wheel Intern., Inc.*, 212 F.3d 1377, 1381 (Fed. Cir. 2000) (noting that "[i]nfringement under the doctrine of equivalents requires an intensely factual inquiry"); *Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324, 1337 (Fed. Cir. 2000) (vacating summary judgment of no infringement under doctrine of equivalents because patentee's expert's inspection report on the accused device created a genuine issue of material fact precluding summary judgment); *Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1380-81 (Fed. Cir. 2013) ("For purposes of summary judgment, we must accept [Plaintiff's] expert's factual assertions as true," and "[b]ased on [Plaintiff's] expert declaration, we hold that a reasonable jury could have found equivalence, and the court erred by making a contrary legal determination.").

On the issue of infringement under the doctrine of equivalents, Zamp contends that notwithstanding Simpson's expert's declaration, Simpson cannot establish infringement because a finding of equivalence between the single strap used in the Accused Products and the rear tether and side tethers that are jointly attached at a single attachment point on a respective side of the helmet would allegedly remove, or "vitiate," the term "jointly" from independent claims 1, 8, and 14 and the term "end portion" out of claims 8 and 14. However, while the doctrine of equivalents cannot be used to vitiate an element from a patent claim in its entirety, *K-2 Corp.*, 191 F.3d at 1367, the essence and nature of the doctrine of equivalents is that some element of the claim is absent (so that there is no literal infringement) but an "equivalent" element exists that effectively takes the place of the "missing" element. Again, the "proper inquiry for the court is to apply the doctrine of equivalents, asking whether an asserted equivalent represents an 'insubstantial difference' from the claimed element, or

9

'whether the substitute element matches the function, way, and result of the claimed element.'" *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) (quoting *Warner-Jenkinson*, 520 U.S. at 40).

Here, Simpson argues that if the "single strap" in the Accused Products does not literally infringe the Patent (because, for example, the Patent is held to require discrete, separate straps for the side and rear tethers), the use of a continuous single piece of webbing that is wound through the sides and rear of the support harness effectively creates side tethers and rear tethers which are then joined together at a clip that attaches at a single common point to each side of the driver's helmet. Thus, according to Simpson, there is an "insubstantial difference" from the literal claim limitations and the Accused Products perform the same functions in the same way with the same results. While it will be up to the jury to decide whether or not to agree with these contentions, Simpson's argument does not improperly "vitiate" any elements in the '529 Patent. *See, e.g.*, *Eagle Comtronics*, 305 F.3d at 1317 (reversing summary judgment of non-infringement under doctrine of equivalents where a claim literally required a front cap, rear body, and seal somewhere between the front cap and rear body, and the accused device had a one-piece unit integrating the front cap and rear body with a seal on its periphery because, as a matter of law, a one-to-one correspondence between components was not required and there were factual issues as to whether the one-piece unit was only insubstantially different from the claimed invention).

Therefore, Zamp is not entitled to summary judgment on Simpson's infringement claims because disputed issues of fact exist with respect to Simpson's alternate claim of infringement under the doctrine of equivalents even if Zamp were entitled to summary

judgment on Simpson's claims of literal infringement (which the Court holds it is not as discussed above).

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT**:

Zamp's Motion for Summary Judgment (Doc. No. 46) is hereby **DENIED**.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: September 20, 2019

Kenneth D. Bell
United States District Judge